WILLIAM W. VAUGHAN *vs.* STREET COMMISSIONERS OF BOSTON.

Suffolk.    November 17, 1890. — June 26, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Tax — Executor and Administrator — Abatement.*

An executor or administrator must not only make the return called for by § 38 of the Pub. Sts. c. 11, of the property in his hands liable to taxation, but must in addition, in case of a partial or total distribution, give notice thereof, under the Pub. Sts. c. 11, § 20, cl. 7, to the assessors, stating the names and residences of and the amount paid to the several parties interested who are residents of this Commonwealth, in order to discharge his duty and avoid taxation, if it is within three years of his appointment, for the amount last assessed to him.

If an executor, who has nearly distributed the estate in his hands, is assessed on the first of May for the amount assessed to him in the preceding year, and is allowed by the assessors until June 15 to bring in a list of the property in his hands, and does not give to them the notice and information required by the Pub. Sts. c. 11, § 20, cl. 7, in case of a distribution, until the November following, he cannot be said to have complied with the statute, and is liable for the amount so assessed to him.

MORTON, J.    This is a petition for certiorari, for the purpose of correcting certain proceedings of the street commissioners of Boston, in refusing to abate a tax assessed by the assessors of Boston upon the petitioner, as executor of the will of Harriet Louisa Atkins, who died testate in Boston in November, 1886. The petitioner was appointed executor in December of the same year, and it appears that on the first day of May, 1887, he had the greater portion of said estate in his possession, of which $23,500 was taxable by the assessors of Boston. Pursuant to a notice to all the inhabitants of Boston to bring in lists of their estates liable to taxation, the petitioner handed to the assessors, before the fifteenth day of June, 1887, that being the time named by the assessors in their notice, a list of such property in his possession as executor, which amounted to $23,500, and was assessed by the assessors for that year on that amount of property. He was assessed for the same amount in 1888, though making no return. By December, 1888, he had distributed the greater part of the estate, and an account showing

that he had done so was duly allowed by the judge of probate in January, 1889. On the 1st of May, 1889, he had only eight dollars of the estate in his possession. The assessors did not know of the allowance of the probate account before the tax for 1889 was assessed. In 1889, and previous thereto, the assessors sent notices to executors, administrators, and trustees whose addresses were known to them, to return to them a list of the property held by them and liable to taxation. Notices were also sent to all tax-payers to bring in lists of their estates liable to taxation, and executors, administrators, and trustees whose estates had been divided were required to give notice of such changes, and to state the names, residences, and amounts paid to the several parties residing in this State. The lists were required to be handed in on or before June 15, 1889. The petitioner prepared a list before June 15, but was prevented by illness in his family from presenting it till after that date. Soon after June 15, and before the tax was assessed, he called at the assessors' office, and was told that he could make the return later if he had a reasonable excuse. On November 21, 1889, after the tax was assessed, a list duly sworn to by the petitioner was filed by him with the assessors. The list was accompanied by full details of the names and residences of and the amounts received by the distributees, and showed that the amount of the property in the petitioner's hands on the 1st of May was eight dollars. In December the petitioner duly, and seasonably, applied for an abatement, which was refused. He thereupon appealed to the street commissioners, that being the proper body, and they also declined to make an abatement, although finding as a fact, what the assessors had previously admitted, that there was good cause shown why a list was not seasonably filed with the assessors.

The petitioner contends that he is entitled to an abatement, on the ground that good cause having been shown why the list called for by the assessors was not carried in at the time named, he is entitled to stand on the same footing as any other tax-payer not an executor, administrator, or trustee would stand under like circumstances. This involves an inquiry into the rights and duties of an executor respecting the assessment of taxes upon him concerning the personal estate in his hands as such executor.

The first statutory provision respecting the subject is found in the Rev. Sts. c. 7, § 10, cl. 7, which provided that personal estate of deceased persons in the hands of their executors or administrators, and not distributed, should be assessed to the executor or administrator in the town where the deceased last dwelt, until the executor or administrator gave notice to the assessors that the estate had been distributed, and paid over to the parties interested therein. Prior to the passage of this statute, this court had decided that a tax could not legally be assessed to a person after his decease, but the assessment should be made upon his estate in the hands of his heirs, administrator, or whoever else might be in possession of it. *Cook* v. *Leland,* 5 Pick. 236. The Commissioners on the Revised Statutes, in speaking of this provision, (Rev. Sts. c. 7, § 10, cl. 7,) for which they refer to *Cook* v. *Leland,* say : " This section is intended as a practical rule for assessors, who, whatever diligence and care they may exercise, often find that they have assessed property to executors or administrators, after it has gone from their hands and been distributed among the heirs and legatees. It is respectfully suggested, that some provision is necessary on this subject, to point out the respective duties of the assessors and the representatives of deceased persons." It is evident that the statute thus passed provided for two things : the place where and the person to whom the personal estate of a deceased person should be assessed. The law remained thus till 1852, when it was further provided that the estate in the hands of an executor or administrator should be liable for taxes assessed upon the personal estate of a deceased person before the appointment of such executor or administrator. St. 1852, c. 234. This statute dealt mainly with the question who should be liable for such taxes. Next came the Gen. Sts. c. 11, § 12, cl. 7, which was made up of the Revised Statutes and of the St. of 1852, except that the words, " which shall be in the hands of their executors or administrators and not distributed," which were in the Revised Statutes, were omitted from the General Statutes. The law remained as above till the passage of the St. of 1878, c. 189, of which § 2 provided that the personal property held by an executor or administrator should be taxable to him for three years after his appointment, unless the same had been distrib-

uted, and notice thereof, stating the names and residences of and the amounts paid to the several parties interested and resident in this State, had been given to the assessors. This statute further provided, in § 3, that, after personal property had been assessed to an executor, administrator, or trustee, an amount not less than that for which he was last assessed should be deemed to be the amount for which he was assessable, unless a true list was brought in by him under the Gen. Sts. c. 11, § 22. This act, it will be observed, dealt with the person to whom, and not with the place where, the personal estate of a deceased person should be assessed. No further legislation occurred in reference to the matter until the passage of the Pub. Sts. c. 11, § 20, cl. 7. This did not change the existing legislation, but embodied the provisions of the General Statutes, and of the St. of 1878, c. 189, § 2, placing them in a logical order, and somewhat compressing them. The provisions of the St. of 1878, c. 189, § 3, were embodied in § 44 of the Pub. Sts. c. 11.

It is obvious from this review of the legislation on the subject, that at least one object of it was to make it compulsory, so far as it could reasonably be done, on the part of executors and administrators, to give to the assessors, in case of a distribution of the estate in their hands, information of the names and residences of and the amounts paid to the parties interested who were resident within this Commonwealth, with a view, no doubt, to the assessors being informed to whom the property was taxable, and of assessing it accordingly. Executors and administrators are not only required to return a list of the property which they have in their hands liable to taxation, as every tax-payer is under the Pub. Sts. c. 11, § 38, but they are also required when they distribute the estate in their hands, in whole or in part, to inform the assessors thereof, and to state to them the amounts paid to and the names and residences of the distributees, so far as they are within this State. Nothing like this is required of the individual tax-payer. If he disposes of property for which he has been taxed, he is not required to state to whom he has transferred it. He is only required to bring in a list of his estate liable to taxation; if he fails to do this, there is no limit to the amount to which the assessors may doom him. In the case of an executor, administrator, or trustee, however, an amount

not less than that last assessed shall be deemed to be the sum assessable unless a true list is brought in to the assessors as required by § 38.    That is, unless he brings in a list the executor, administrator, or trustee is to be assessed for the amount for which he was last assessed.    This is upon the ground that the amount for which he is taxable, having once been ascertained, the only change which can be reasonably expected to take place in the condition of the estate is one of decrease rather than increase, and it would be obviously unjust to give to the assessors an unlimited power to add to the amount of the estate to be assessed.

There is no conflict between the provisions of the Pub. Sts. c. 11, § 20, cl. 7, and those of the Pub. Sts. c. 11, §§ 38, 44, but they are all consistent with one another, and together prescribe clearly the duties of administrators and executors as to the taxation of the estates in their hands.    Section 38 requires all persons to bring in to the assessors a list of their property liable to taxation.    This includes all, whether in a representative or individual capacity, who hold property liable to taxation.    But as various questions might arise concerning the estates of deceased persons, clause 7 of § 20 makes provision as to the place and manner in which, and the persons to whom, and for how long, the estates of deceased persons shall be taxable.    There is nothing in this clause that relieves the administrator or executor from the requirement of § 38, to return a list of the property in his hands liable to taxation.    Indeed, if the estate has been diminished by the payment of debts, or from any other cause except distribution, the only way in which he can avail himself of that fact is by returning a list under § 38, which will show the amount of the property remaining in his hands.    If there has been a distribution partial or total, then he must, in addition to the list called for by § 38, give notice to the assessors, under clause 7 of § 20,. of such distribution, stating the names and residences of and the amounts paid to the several parties interested, who are residents of this Commonwealth.    If he fails to make the return called for by § 38, then the provisions of § 44 come into play, and an amount not less than that last assessed to him shall be deemed to be the sum for which he is assessable.    In other words, the executor or administrator must not only make

the return called for under § 38, but, in case there has been a distribution within three years, must give the notice concerning the same called for by clause 7 of § 20, in order to discharge his duty.

In the present case, the estate was in effect all distributed before May 1, 1889, but the petitioner gave no notice as required by clause 7, either before that date or before June 15 following, which was the last day fixed by the assessors for bringing in lists, nor did he carry in a list of the property in his hands as executor liable to taxation. The petitioner, however, insists that, the commissioners having found there was good cause for not bringing in a list prior to June 15, and such appearing to be the fact, and there being on May 1, 1889, only eight dollars of the estate in his hands for which he was taxable, out of the $23,500 for which he had been assessed the year before, he is entitled to an abatement. But the difficulty with the petitioner's position is, that, assuming that he would be entitled to an abatement if there had been no distribution, he has not given the notice which is required when there has been distribution, which is this case. *Hardy* v. *Yarmouth*, 6 Allen, 277. *Carleton* v. *Ashburnham*, 102 Mass. 348. The direction of the statute, as the court observes in *Hardy* v. *Yarmouth*, is that the estate shall be taxed to the executor until he gives the required notice, and it is not for this court to disregard this provision. No time is fixed within which the notice and information called for by clause 7 of § 20, in case of a distribution, shall be furnished, nor is there any remedy provided if it should turn out that there had been good cause for the delay in giving the notice and furnishing the information, nor any method for investigating the question whether there was or was not good cause for the delay. Probably, as a practical rule, it would work no harm to allow such notice and information to be given at any time on or before the date fixed by the assessors for bringing in lists under § 38. The actual assessment of taxes does not usually begin till after that, and no injury could result if the notice and information were delayed till then. Such seems to have been the rule adopted by the assessors of Boston, and we presume elsewhere. In the present case, however, the notice was not given till long after that date, and, whatever might have been the result had

the notice been given on or before June 15, we do not see how
it can be held that giving it in November was a compliance with
the statute.  The matter of abatement, like the matter of assess-
ment, is one of purely statutory regulation.  It is plain that the
list referred to in the statutes concerning abatement is not the
notice and information called for by clause 7 of § 20, but the
list spoken of in § 38, and that it is only that list which can be
received as preliminary to an abatement, upon good cause being
shown for delay in bringing it in.  Pub. Sts. c. 11, §§ 38, 39,
40, 41, 42, 72, 73.  Even if, therefore, there were good cause
shown for the delay in bringing in the list required by § 38, the
assessors would still be required to assess to the petitioner an
amount not less than that last assessed to him, because he had
not given the notice and information required by clause 7 of
§ 20.  If the construction thus given to the statutes leaves par-
ties situated like the petitioner without a remedy, it is for the
Legislature and not this court to provide one.  We think, there-
fore, the entry must be,

*Petition dismissed.*

*W. W. Vaughan,* pro se.
*A. J. Bailey,* for the respondent.